IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **KIMBERLY ANDERWOOD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:23-CV-58-MAC |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

The Plaintiff, Kimberly Anderwood ("Anderwood"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

### I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292. Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II. BACKGROUND

### A. Procedural History

Anderwood applied for disability insurance benefits in September 2019, due to impairments that allegedly became disabling on January 1, 2007. (Tr. 217-226.) Following the denial of her claim, she requested a hearing before an administrative law judge, which was initially held on February 24, 2021, but Anderwood did not appear. (Tr. 20.) Another hearing was set for May 25, 2021, but Anderwood appeared and requested a postponement to obtain representation. (Tr. 42-48.) On August 23, 2022, Administrative Law Judge Ross Stubblefield (ALJ Stubblefield) held a telephone hearing; however, Anderwood again did not appear, but her representative did. (Tr. 20.) A request to show cause for failure to appear was sent to Anderwood, but no response was received from her or her representative prior to the issuance of ALJ Stubblefield's decision. (*Id.*)

On October 12, 2022, ALJ Stubblefield issued a decision denying Anderwood's application. (Tr. 20-32.) Anderwood requested review of the ALJ's decision by the Appeals Council, which was denied on February 3, 2023, thereby prompting this appeal. (Tr. 1.)

### B. Factual History

Anderwood was 51 years old on the date her application was filed, with a high school education and no past relevant work experience. (Tr. 31.) Anderwood's application was denied at the initial and reconsideration levels.

### C. Administrative Decision and Appeal

ALJ Stubblefield utilized the five-step sequential analysis model specified by regulations

and approved by courts in reaching his decision denying Anderwood's application.[3] At step one, ALJ Stubblefield found that Anderwood has not engaged in substantial gainful activity since September 9, 2019, the application date. (Tr.23.) At steps two and three, he found that Anderwood has the severe impairments of disorder of the right shoulder and disorder of the back, but these impairments do not meet or medically qualify under the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed Impairments) for presumptive disability. (Tr. 13-14.) ALJ Stubblefield determined that Anderwood retained the residual functional capacity (RFC) to perform a full range of light work. (Tr. 29-31.)

ALJ Stubblefield found Anderwood has no past relevant work (but previously worked in childcare) and is not disabled as directed by Medical Vocational Grid Rule 202.13.[4] (Tr. 31-32.)

### III. POINTS OF ERROR

Anderwood argues that the ALJ failed to properly evaluate the medical opinion of Dr. Frankie Clark, Ph.D., and the RFC failed to account for her mental limitations in interacting with others and maintaining concentration, persistence, or pace thereby creating error in the RFC

---

[3] Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
   1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
   2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)
   3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed, and benefits are awarded. If not, the analysis continues.)
   4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).
   5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

[4] The Medical–Vocational Guidelines, commonly referred to as the "grid rules," allow the Commissioner to take "administrative notice" of the availability of jobs that exist in the national economy that can be performed by individuals at various function levels (i.e., sedentary, light, medium, heavy, and very heavy) in lieu of calling a vocational expert to testify. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200(b); *see also Heckler v. Campbell*, 461 U.S. 458, 467, 470 (1983).

determination. (Doc. #14.) In response, the Defendant asserts that the ALJ properly considered and discussed this medical opinion and properly found that the opinion was not consistent with or supported by the evidence as a whole. (Doc. #15.) In addition, he asserts that the evidence does not support the inclusion of mental limitations in the RFC finding. (*Id.*)

## IV. DISCUSSION AND ANALYSIS

### A. Residual Functional Capacity

The regulations state that residual functional capacity (RFC) means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012). Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process. At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed. Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five). SSR 96-8p, 1996 WL 374184 (July 2, 1996). An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's

impairments and functional limitations can perform. *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to supervision). *Id.* In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In the present action, the ALJ concluded that Anderwood retained the residual functional capacity (RFC) to perform a full range of light work and is not disabled as directed by Medical Vocational Rule 202.13. (Tr. 29-32.) A full range of light work includes lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for 6 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday with normal breaks. (Tr. 29.) According to Grid Rule 202.13, a finding of "not disabled" is directed where the claimant is an individual approaching advanced age who is limited to light work and has high-school education without transferable job

skills (unskilled). 20 C.F.R. pt. 404, Subpart P., App. 2. Anderwood argues that this RFC contains error and is not supported by substantial evidence and points to the lack of consideration given to the opinion of Dr. Frankie Clark and the lack of mental limitations in the RFC finding.

1. *Evaluation of Medical Opinions*

The Social Security Administration promulgated a new rule regarding residual functional capacity determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Anderwood applied for disability insurance benefits on September 9, 2019. (Tr. 237.) Therefore, the new rule applies. This rule addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). Instead, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are *supportability* and *consistency*. *Id.* at § 404.1520c(b)(2). "At bottom, 'supportability' is an inward-facing concept, requiring the ALJ to evaluate how well a given medical opinion is supported on the strength of the opinion's own reasoning, while 'consistency' is an outward-facing concept, requiring the ALJ to evaluate how consistent a medical opinion is with other evidence in the record." *Terry v. Comm'r, SSA*, No. 4:20-CV-618-SDJ, 2023 WL 2586304, at *5 (E.D. Tex. Mar. 21, 2023).

7

The remaining factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). The ALJ must articulate how persuasive he finds each of the opinions in the record and explain the consideration of the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In those cases, the ALJ must articulate the consideration of the other factors.

In this case, ALJ Stubblefield discusses the following medical opinions with regard to Anderwood's mental conditions: Nurse Practitioner Debra Utpadel (treating provider); Dr. Walt Mercer, Ph.D. (mental state agency medical consultant); Dr. Joel Forgus, Ph.D. (mental state agency medical consultant); and Dr. Frankie Clark, Ph.D. (mental consultative examiner).

2. *Discussion*

Regarding Anderwood's mental RFC, he found NP Utpadel's opinion persuasive. (Tr. 30.) He noted that her opinion, dated September 24, 2019, was consistent with the objective medical evidence and supported by the lack of evidence of ongoing mental health treatment.[5] (*Id.*) NP Utpadel is Anderwood's treating provider at Eastside Community Clinic. (Tr. 344.) NP Utpadel filled out a questionnaire that checked a box stating that Anderwood was being treated for a mental condition and checked a box concluding that Anderwood did not have a mental condition that imposed more than minimal limitations. (Tr. 385.) She made a handwritten

---

[5] Other medical records indicate that she denied mental health treatment at the Burke Center. (Tr. 398, 410, 422.) Records from 2021 indicate that her medication for depression and anxiety were effective and her conditions were improved. (Tr. 436-442.) On June 21, 2022, Anderwood reported that she had been off of all medications for a year. (Tr. 469.)

8

notation stating that Anderwood had not been seen since May 2019. (*Id.*) At that May visit, Anderwood complained of a cough, congestion, and tooth infection. (Tr. 358.) NP Utpadel noted that a PHQ-9 was completed, and Anderwood was "not clinically depressed." (Tr. 361.) Anderwood also scored a 10 on the anxiety disorder scale. (*Id.*) Her exam showed that she was alert, cooperative, normal mood and affect, normal attention span, and normal concentration. (Tr. 362.) Anderwood's prior visit with NP Utpadel on April 26, 2019, for irritable bowel syndrome and hyperlipidemia, indicated she had moderate depression and an anxiety score of 16, but her exam showed that she was alert, cooperative, normal mood and affect, normal attention span, and normal concentration. (Tr. 344-350.) The undersigned finds ALJ Stubblefield's evaluation of this opinion is supported by the evidence of record.

The state agency medical examiner, Dr. Walt Mercer, Ph.D., evaluated Anderwood's records on November 11, 2019, noting NP Utpadel's conclusion and the combined evidence from Sabine County and East Texas Community Health showed her psychological symptoms on exam were normal and stable. (Tr. 54.) He further explained that Anderwood has not cooperated with the disability process in returning the necessary forms despite repeated attempts resulting in insufficient evidence to support her claims. (Tr. 54-55.) Therefore, he found no severe mental impairments. (*Id.*) Likewise, ALJ Stubblefield found that Anderwood did not have a severe mental impairment. He stated that her non-severe conditions were managed medically and should be amenable to proper control by adherence to recommended medical management and medical compliance or they are not expected to last for 12 consecutive months. (Tr. 25.) Further, no aggressive treatment had been recommended or anticipated for her non-severe conditions. (*Id.*)

On September 21, 2020, state agency medical examiner, Dr. Joel Forgus, Ph.D. evaluated Anderwood's records (including Dr. Clark's consultative exam) and found that her anxiety was a

9

severe impairment. (Tr. 67.) Under the psychiatric review technique for step two, he reported that she had only mild limitations in understanding, remembering or applying information, interacting with others, and adapting and managing oneself. (*Id.*) However, she had a moderate limitation as to concentration, persistence, or maintaining pace. (*Id.*) He stated that "although the claimant has limitations related to the impact of a mental [impairment], the [medical evidence of record] does not indicate that these [symptoms] fully compromise the ability to function independently, effectively, and appropriately on a sustained basis at all levels." (*Id.*) For the mental RFC evaluation, Dr. Forgus found in the area of concentration and persistence that Anderwood was moderately limited in carrying out detailed instructions, maintaining attention and concentration, and in completing a normal workday without interruptions from psychologically based symptoms. (Tr. 69-70.) Ultimately, despite finding her impairment severe with some limitations, he concluded that Anderwood is able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes. (Tr. 70.) He noted that her alleged limitations are not fully supported by the evidence in the record. (*Id.*) Based upon this finding, the state examiner gave the following three jobs as available occupations: street cleaner (light work, reasoning level 1 simple instructions), returned goods sorter textile (light work, reasoning level 2 detailed but uninvolved instructions), and billposter business services (light work, reasoning level 2 detailed but uninvolved instructions). (Tr. 71.) These are all light, unskilled jobs.[6] *See* DICOT 955.687-018, 1991 WL 688405 (1991); DICOT 922.687-086, 1991 WL 688139 (1991); DICOT 841.684-010, 1991 WL 681845 (1991). Although ALJ Stubblefield's findings are slightly

---

[6] *See Pete v. Astrue*, No. 08–CV–774, 2009 WL 3648453, at *5–6 (W.D. La. Nov. 3, 2009) ("Contrary to plaintiff's argument, the fact that instructions may be various, furnished in multiple forms, or *detailed* does not preclude them from being simple. Instead, the classification of these jobs as 'unskilled' indicates they are by definition simple.") (emphasis added).

different than Dr. Forgus' findings, they both concluded that Anderwood was able to at least perform light, unskilled work involving only simple duties, such as these given alternative jobs. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.13; 20 C.F.R. 404.1568(a).

Ultimately, ALJ Stubblefield found the state medical examiner's opinion unpersuasive as a whole—physically and mentally. Mentally, ALJ Stubblefield agreed that Anderwood had only a mild limitation as to interacting with others; however, he found no limitations as to understanding, remembering, or applying information and adapting or managing oneself (Dr. Forgus found mild limitations). (Tr. 26-26.) As to concentration, persisting or maintaining pace, ALJ Stubblefield found only a mild limitation while Dr. Forgus found a moderate one. (Tr. 26.) ALJ Stubblefield noted that Anderwood admitted that she was able to prepare meals, watch TV, manage funds, and handle her own medical care, and that the record shows that she had no issues completing medical testing that assessed her concentration and attention. (Tr. 26-27.) As stated, however, the end result between these two opinions is not different when it comes to her ability to perform light, unskilled work.[7] In fact, ALJ Stubblefield's RFC is more favorable to Anderwood as it and Grid Rule 202.13 call for light, unskilled work, whereas the SAMC determination states that Anderwood is not limited to just unskilled work and can also perform heavy work pursuant to Rule 204. (Tr. 70.) Consequently, Anderwood's allegation that there was error in ALJ Stubblefield not fully considering this opinion would be harmless error, if any.

On September 5, 2020, Dr. Frankie Clark, Ph.D., mental consultative examiner, examined Anderwood's mental status. (Tr. 398-401.) Anderwood reported that she has not been treated in the past by mental health professionals, has not sought treatment from the local mental health

---

[7] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." S.S.R. 85-15, 1985 WL 56857 (1985).

11

clinic—the Burke Center, and has not had any psychiatric hospitalizations. (Tr. 398-400.) Anderwood also stated that she thinks of suicide and tried to kill herself years ago. (Tr. 400.) Dr. Clark wrote that she appeared anxious; her affect was broad but cooperative; her fund of information was fair; recall was fair; intelligence was average; and she had no difficulty with remote or recent memory. (*Id.*) His clinical impression was anxiety with difficulty concentrating, and he gave her a guarded prognosis due to her lack of treatment. (Tr. 401.) He concluded in his functional capacity assessment that she had the following limitations: simple instructions; impairment regarding relating to others; likely slower concentration, persistence and pace; and unable to adapt and manage her emotions. (*Id.*) ALJ Stubblefield found this opinion unpersuasive as it was contrary to the objective medical evidence showing no severe impairment and inconsistent with her actual exam. (Tr. 31.) He also found that Dr. Clark's findings were vague regarding what social interactions she has and to what extent she needed a slower pace and concentration limitation. (*Id.*)

Anderwood argues that ALJ Stubblefield failed to address the supportability factor in evaluating Dr. Clark's opinion. She notes all of the self-reported symptoms she gave in Dr. Clark's report and the exam findings regarding her fund of information being "fair." She also argues that he failed to consider the consistency factor as to other evidence in the record including her self-reported symptoms during treatment exams, and the PHQ-9 and GAD-7 tests.

ALJ Stubblefield stated in his decision that he gave Anderwood's subjective complaints the "greatest consideration supported by the record." He noted these in his discussion of Dr. Clark's exam. (Tr. 24.) However, he found Anderwood's statements concerning the limiting effects of her symptoms were not entirely consistent with the evidence, including her lack of

12

treatment, and lack of medication compliance.  (Tr. 25, 29); *see also Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005) (failure to seek treatment is an indication of non-disability).

The depression and anxiety tests (PHQ-9 and GAD-7) that Anderwood refers to were performed by NP Utpadel and other treating providers with East Texas Community Health.  As noted above, NP Utpadel opined that Anderwood did not have a severe mental condition despite these tests, and the other providers stated that her mental conditions improved with medication.

Moreover, the undersigned agrees that Dr. Clark's conclusions are vague by merely stating that she is impaired in relating to others and concentration, persistence and pace is "likely slower." He does not state to what extent these limitations affect her in a job setting—is it occasionally, frequently, etc.? Nor does he state whether the limitation is mild, moderate, extreme, etc.  Given the lack of specificity, these particular findings are not necessarily inconsistent with ALJ Stubblefield's RFC finding for light, unskilled work.[8]  ALJ Stubblefield noted that she had a mild limitation in interacting with others and concentrating, persisting or maintaining pace.[9]  (Tr. 26.) Mental impairments are evaluated according to a five-point scale: "none, mild, moderate, marked, and extreme."  *See* 20 C.F.R. § 404.1520a (2017). The first two points on the scale, i.e. "none" and "mild" do not indicate a severe impairment. *Id*. The last point on the scale, i.e., "extreme" represents a degree of limitation presumptively incompatible with ability to do any gainful activity.

---

[8] Dr. Clark also found that Anderwood should be limited to simple instructions.  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in short period of time."  20 C.F.R. 404.1568(a) (2008); *see also Lawrence T. v. Kijakazi*, No. 4:22-CV-903, 2023 WL 5808374, at *5 (S.D. Tex. Sept. 6, 2023) ("A limitation to simple, repetitive tasks equates to a limitation to unskilled work. Further, a reasoning level 2 position denotes that this individual would apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, but courts have repeatedly found that jobs with a GED reasoning development level 2 are consistent with limitations to simple instructions and routine tasks.").

[9] Although Dr. Forgus found that Anderwood had moderate limitations in concentration, persistence, and pace, he still found her able to "concentrate for extended periods" and the examiner ultimately assessed her capable of performing at the very minimum three light, unskilled jobs.  (Tr.70-71.)

*Id.* The middle point, "moderate," while not presumptively disabling, nevertheless represents a severe impairment. *Id.*

Anderwood also claims that ALJ Stubblefield failed to incorporate the mild mental limitations he found at step two and three into the RFC. However, as stated above, mild mental limitations are not indicative of a severe impairment. Although that does not preclude the inclusion of limitations into the RFC, ALJ Stubblefield stated in his opinion that the limiting effects of Anderwood's non-severe conditions were considered in determining her RFC, and the RFC reflects the degree of limitation that he found in the "paragraph B" mental function analysis. (Tr. 26, 27.) Thus, in his opinion, these limitations did not significantly erode his RFC finding for light, unskilled work. *See Jeansonne v. Saul*, 855 F. App'x 193, 197–98 (5th Cir. 2021) ("Because substantial evidence shows that Jeansonne's mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity."). When the characteristics of the claimant correspond to criteria in the grids, and the claimant either suffers only from exertional impairments *or his nonexertional impairments (i.e. mental limitations) do not significantly affect his residual functional capacity*, the ALJ may rely exclusively on the grids in determining whether there is other work available that the claimant can perform. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citing 20 C.F.R. § 404.1569 & Subpart P., App. 2, § 200.00); *see also Dellolio v. Heckler*, 705 F.2d 123, 127–28 (5th Cir. 1983).

It was within ALJ Stubblefield's discretion to determine the credibility of the various medical reports in the record. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is also ALJ Stubblefield's job to craft the RFC based on all the relevant medical and other evidence. 20 C.F.R. §§ 404.1545, 404.1546; *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

14

The RFC is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *Taylor*, 706 F.3d at 602-03 (ALJ has the "sole responsibility" to assess the RFC and that what the claimant "characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work"). ALJ Stubblefield evaluated the record as a whole specifically looking at consistency and supportability and rendered a decision that reconciles conflicting medical evidence. Consequently, the undersigned affirms ALJ Stubblefield's decision and finds that Anderwood's argument that the decision lacks the support of substantial evidence is without merit.

## V. RECOMMENDATION

ALJ Stubblefield's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections. Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy

of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 5th day of August, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE